IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Venisha Mary Bass, | ) Civil Action No.: 8:15-cv-3659-BHH |
| Plaintiff, | ) |
| v. | ) **OPINION AND ORDER** |
| Nancy A. Berryhill, Commissioner of Social Security,[1] | ) |
| Defendant. | ) |

Plaintiff Venisha Mary Bass ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of Defendant, Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, D.S.C., this matter was referred to United States Magistrate Judge Jacquelyn D. Austin, for pretrial handling. On October 31, 2016, the Magistrate Judge issued a Report and Recommendation ("Report" or "R&R") in which she determined that Plaintiff did not show that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. Accordingly, the Magistrate Judge recommended affirming the Commissioner's decision. (ECF No. 32.) Plaintiff filed Objections on December 1, 2016. (ECF No. 35.) For the reasons stated below, the Court adopts the Report and affirms the Commissioner's decision.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## FACTUAL AND PROCEDURAL BACKGROUND

The Report and Recommendation sets forth in detail the relevant facts and standards of law on this matter, and the Court incorporates them and summarizes below in relevant part. Plaintiff was 40 years old on her alleged disability onset date and has past relevant work experience in housekeeping, packaging and janitorial work. On October 5, 2012, Plaintiff filed an application for DIB benefits, alleging a disability since May 1, 2012, due to impairments of vocal cord blisters/hoars[e]ness, borderline intellectual functioning, attention deficit hyperactive disorder (ADHD), and acid reflux. A hearing was held before an Administrative Law Judge ("ALJ") who issued an unfavorable decision on June 13, 2014, finding Plaintiff was not disabled under the Act. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed an action in this Court on September 11, 2015. (ECF No. 1.)

## REPORT AND RECOMMENDATION

The Magistrate Judge recommends affirming the ALJ's decision. The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1). "However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate

Judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the Magistrate Judge's findings or recommendations." *Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (internal citations omitted).

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Under 42 U.S.C. § 405(g), the Court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *see, e.g., Daniel v. Gardner*, 404 F.2d 889 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976). In order for a reviewing court to determine whether the Commissioner based a decision on substantial evidence, "the decision must include the reasons for the determination . . . ." *Green v. Chater*, 64 F.3d 657, 1995 WL 478032, *2 (4th Cir. 1995) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). The statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See, e.g., Vitek v. Finch*, 438 F.2d 1157 (4th

3

Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968). Accordingly, "the court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). As noted by Judge Sobeloff in *Flack v. Cohen*, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id.* at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## DISCUSSION

Plaintiff filed objections to the Report and Recommendation on December 1, 2016. (ECF No. 35.) She objects to the Magistrate Judge's recommendation concerning, *inter alia*, the Appeals Council's decision to deny review of Plaintiff's case based on the new evidence Plaintiff submitted, and the ALJ's failure to properly analyze Plaintiff's ability to perform past relevant work.

Very respectfully, these objections are the precise matter raised to the Magistrate Judge and appropriately rejected in her thorough thirty-five page Report. (*See* R&R at 17–34); *see also Hendrix v. Colvin*, 2013 WL 2407126, at *4 (D.S.C. June 3, 2013); *Jackson v. Astrue*, 2011 WL 1883026 (W.D.N.C. May 17, 2011); *Aldrich v. Bock*, 327 F.

Supp. 2d 743, 747 (E.D. Mich. 2004). Nevertheless, the Court employs *de novo* review to consider Plaintiff's specific arguments.[2]

### A.     Appeals Council

Plaintiff first asserts that the Appeals Council erred in denying review of Plaintiff's case based on the new evidence she submitted. (ECF No. 35 at 6.) She asserts that the submitted evidence indeed relates back to the requisite time period and that there is a reasonable possibility this evidence would have changed the outcome. (*Id.*)

Evidence submitted to the Appeals Council with a request for review must be considered in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991) (en banc) (internal quotation marks and citation omitted). Evidence is new "if it is not duplicative or cumulative." *Id.* at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* "[P]ost-[ALJ decision] medical evidence generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-[ALJ decision] condition." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (citation omitted). Nonetheless, evidence should not be given retrospective consideration where there is no support for the existence of impairments or the severity alleged prior to the date of the ALJ's decision. *See Johnson v. Barnhart*, 434 F.3d 650, 655–56 (4th Cir. 2005) (per curiam). When a claimant seeks to present

---

[2] As always, the Court says only what is necessary to address such arguments against the already meaningful backdrop of a thorough Report of the Magistrate Judge, incorporated entirely by specific reference, herein, to the degree not inconsistent. Exhaustive recitation of law and fact exists there.

new evidence to the Appeals Council, he is not required to show good cause for failing to present the evidence earlier. *Id.* at 96 n.3; cf. 20 C.F.R. § 404.970(b).

Plaintiff presented to the Appeals Council the following "new" evidence: 1) South Carolina DMV records dated September 25, 2014 and March 12, 2015; 2) medical records from Roper St. Francis dated August 21, 2014, September 25, 2014 to January 27, 2015, March 13, 2015, June 12, 2015, and July 2, 2015; 3) medical records from MUSC dated October 15, 2014; and 4) medical records from Lowcountry Hematology and Oncology dated January 14, 2015 and June 10, 2015. (Tr. 2.)

The Appeals Council concluded that the new information was about a later time and thus did not impact the decision. (Tr. 2.) Accordingly, the Appeals Council denied review. (Tr. 1.) The Magistrate Judge determined that the new information that Plaintiff sought to introduce was not material because it does not relate to Plaintiff's condition prior to the ALJ's decision and that, regardless, the new information would not have changed the outcome. (ECF No. 32 at 33–34.) The Court agrees.

Plaintiff argues that the highlighted records relate back to the requisite time period because they reflect the "continuation of treatment that Plaintiff received from Dr. Robinson and Dr. Barron." (ECF No. 35 at 5.) She further argues the records from Dr. Rick Olson ("Dr. Olson") at MUSC should have been considered because he was one of her treating physicians and he opined that she would benefit from medical disability assistance. (*Id.*)

With respect to Dr. David Robinson ("Dr. Robinson"), Plaintiff's primary care physician, the record before the ALJ included a statement he gave on January 3, 2014, for purposes of an application for a disabled placard. (Tr. 454.) That statement indicated

6

that Plaintiff temporarily could not walk one hundred feet nonstop without aggravating an existing medical condition, including the increase of pain. (Tr. 454.) In his decision, the ALJ accorded this opinion "little weight" because "it specifically stated that it applied to a period of less than 12 months." (Tr. 95.) The "new" DMV records submitted to the Appeals Council contain two additional applications for a disabled placard, both completed by Dr. Robinson. These additional applications "certify" that Plaintiff temporarily could not walk one hundred feet nonstop without aggravating an existing medical condition. (Tr. 37, 70.)

Contrary to Plaintiff's assertions, these DMV records do not require the Appeals Council to review her case. First, there is no indication that the limitations indicated in the "new" applications are based on the same impairments complained of by Plaintiff during the requisite time period. There was a two month gap between when the January 2014 application lapsed and when a new one was applied for. Further, these records actually bolster the ALJ's findings that this is a temporary limitation. Each time Dr. Robinson completed the application, he marked the walking limitation as "temporary," which the application defines as "at least for 4 months not to exceed 1 year." (Tr. 37, 70.) As noted above, the ALJ accorded the January 2014 DMV record "little weight" because "it specifically stated that it applied to a period of less than 12 months." (Tr. 95.) In addition, as the Magistrate Judge correctly stated, Plaintiff did not claim to be disabled due to inability to walk or stand. Thus, even if these records were found to relate back, it does not appear they would have changed the outcome of the ALJ's decision.

7

As for Dr. Paul Barron, the "new" records from Lowcountry Hematology & Country name him as a "referring physician." (Tr. 57.) Plaintiff claims these records show Plaintiff was having bilateral ankle pain and swelling, and further support Dr. Robinson's finding that her ability to walk was limited. (ECF No. 35 at 5.) The cited record, dated January 14, 2015, states "Mrs. Bass returns today for a 3-month followup. *Since our last visit*, her primary complaint *is now* bilateral knee as well as lower extremity discomfort." (Tr. 57 (emphasis added).) Under "impressions," the doctor wrote "*worsening* lower extremity aches and pains." (Tr. 58 (emphasis added).) These notes indicate that the symptoms reported by Plaintiff on January 14, 2015, reflected a worsening of her condition. Because this record reflects evidence of worsening change in Plaintiff's condition, it is not related to the time period considered by the ALJ. *See*, *e.g.*, *Booker v. Colvin*, No. 1:13-CV-2033-TMC, 2014 WL 6816878, at *5 (D.S.C. Dec. 4, 2014) (noting new evidence submitted to the Appeals Council reflects "evidence of worsening change" in the plaintiff and, therefore, such evidence "does not 'permit[ ] an inference of [any] linkage with'" his pre-ALJ decision condition (quoting *Bird*, 699 F.3d at 341)); *Evans v. Colvin*, No. 8:13-CV-01325-DCN, 2014 WL 4955173, at *28 (D.S.C. Sept. 29, 2014) ("The evidence with respect to Plaintiff's hip pain, at best, shows a worsening of her condition after the ALJ's decision and not a condition to that level of severity at the time of the ALJ's decision; thus, this new evidence is not material."); HALLEX I–3–3–6 (outlining internal SSA rules for consideration of new and material evidence, and noting that "[e]vidence is not related to the period at issue when the evidence shows: A worsening of the condition after the expiration of a DLI in a title II disability insurance benefits claim.").

8

Finally, as to Dr. Olson, the "new" MUSC medical records reflect that he opined Plaintiff "is in need of and would benefit from medical disability assistance and appears to meet criteria with multiple medical issues limiting her ability to sustain employment and obtain adequate financial support. Documented genetic mutation associated with mental retardation clearly is a significant nonreversible medical disability." (Tr. 62.) This opinion does not require review of Plaintiff's case by the Appeals Council because it would not have changed the outcome—Dr. Olson does not describe any functional limitations on Plaintiff's mental abilities that were caused by a genetic mutation. Further, the ultimate decision on whether a claimant meets the statutory definition for disability is an administrative decision that is always reserved to the Commissioner. *See Morgan v. Barnhart*, 142 Fed. App'x. 716, 721–722 (4th Cir. 2005) (distinguishing between medical opinions and legal conclusions by physicians that claimant is unable to work or disabled, finding the latter are matters reserved to the Commissioner and are not entitled to heightened evidentiary value); 20 C.F.R. §§ 404.1527(e) and 416.927(e).

### B.    Past Relevant Work

Plaintiff next argues that the ALJ erred in finding Plaintiff capable of performing past relevant work. She first asserts here that the ALJ failed to properly analyze her past "substantial gainful activity"; specifically, her last place of employment. (ECF No. 35 at 2.) Plaintiff claims that the ALJ failed to consider that Plaintiff's last period of employment was at a warehouse and only lasted for "two months in two different positions." (*Id.*) Without any supporting authority, Plaintiff claims that "the warehouse position was not sufficient substantial gainful activity given that the majority of her past employment was in the housekeeping/janitorial area." (*Id.*) She states it is important to

note that "the ALJ's decision focused on her past relevant work as a housekeeper and not a warehouse worker." (*Id.*) Plaintiff cites no authority for why this distinction is important.

"Past relevant work" is work that a claimant has done within the past fifteen years, that was substantial gainful activity ("SGA"), and that lasted long enough for the claimant to learn to do it. 20 C.F. R. § 404.1565(b)(1). SGA is defined as work activity, even if such work is done on a part-time basis for less pay or with less responsibility than previous work, that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572. The work must be done for pay or profit, whether or not a profit is realized. *Id.* If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in SGA. *Id.* §§ 404.1574–.1575.

Here, the Court finds no error in the ALJ's focus on Plaintiff's ability to perform past relevant work as a housekeeper. In order to find that Plaintiff could perform past relevant work, the ALJ did not need to find that Plaintiff could still perform *every* job she ever held. *See Wiggins v. Colvin*, No. 1:12-CV-196, 2014 WL 184414, at *7 (W.D.N.C. Jan. 15, 2014) ("The law is clear that a claimant will be found capable of performing past relevant work, and not disabled, when the claimant can perform *a* past relevant job as the job was actually performed by the claimant.") (emphasis added); 20 C.F.R. §§ 404.1560(b)(2), 404.1565(b)(1), 416.960(b)(2); SSR 82–61. The ALJ expressly considered Plaintiff's past relevant work "doing cleaning and janitorial work" and correctly found that such work could be classified as that of a housekeeper according to the vocational expert's testimony. (Tr. 96.) The Court finds no error in this respect.

10

Plaintiff next argues that the ALJ erred in finding Plaintiff could perform past relevant work as a housekeeper because he ALJ failed to consider certain responses given by the vocational expert to hypothetical questions asked by Plaintiff's counsel at the ALJ hearing. (ECF No. 35 at 4.) Here, Plaintiff cites her testimony from the ALJ hearing that her condition with her voice affected her ability to perform janitorial work "because you have to be able to talk to the patients and some of the workers, like nurses and stuff if something is wrong with the patient." (Tr. 110.) Plaintiff's counsel later asked the vocational expert about how someone with Plaintiff's voice condition would function in a housekeeping position:

> Q. So interaction with the public in housekeeping, would that, would that be one where they would have to be able to speak and communicate?
> A. On occasion, yes.
> Q. Okay. And if one had difficulty doing that, then that would affect their ability to complete the job?
> A. In the housekeeper position it wouldn't affect the ability to complete the general task of a housekeeping job . . . but it would interfere with the perception of being able to provide customer service if one of the room residents had a question that the housekeeper would not be able to respond to.

(Tr. 124–25.)

In his decision, the ALJ found that Plaintiff "has remained able to communicate despite her intermittent hoarseness." (Tr. 95.) He accordingly accounted for Plaintiff's gastroesophageal reflux in his RFC finding by restricting her from work that involves constant verbal communication. (Tr. 92.) The hypothetical given to the vocational expert considered a situation with much less than "constant verbal communication." Thus, the vocational expert's testimony that a housekeeper may need to speak and communicate "on occasion" did not conflict with Plaintiff's RFC. The testimony highlighted by Plaintiff

11

does not convince the Court that the ALJ's finding as to Plaintiff's ability to perform past relevant work was not supported by substantial evidence.

To the extent Plaintiff asserts that the ALJ failed to properly weigh the highlighted testimony from the vocational expert, Plaintiff is essentially asking the Court to reweigh the evidence and come to its own conclusion. Such reweighing of the evidence is not within the province of this court. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

### C.    Remaining Arguments

The remainder of Plaintiff's arguments have been specifically considered *de novo* by the Court and either (1) fail to allege how the outcome of the decision would have been different; (2) lack record support; (3) are duplicative exactly of arguments already raised and adequately addressed by the recommendation; or (4) rely on evidence that, even where true, does not affect the view of the evidence, relied upon by the ALJ, as substantial. The Court is satisfied that in all respects the ALJ's findings are based on substantial evidence.

## CONCLUSION

The Court has carefully reviewed the record, including the findings of the ALJ and Plaintiff's objections to the Report and Recommendation. The Court concurs in the recommendation of the Magistrate Judge that substantial evidence in the record supports the decision of the Commissioner and thus adopts the Report and Recommendation, incorporating it herein by reference to the extent it is consistent with this order. The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

                                                             <u>s/Bruce Howe Hendricks</u>
                                                            United States District Judge

March 30, 2017
Greenville, South Carolina